.Spaulding v. State.

## SPAULDING v. THE STATE.

[No. 20,191.    Filed March 10, 1904.]

NEW TRIAL.—*Newly Discovered Evidence.—Diligence.*—A new trial will not be granted on the ground of newly discovered evidence as to the previous history, habits, and moral character of a witness, where the only excuse shown for the failure to produce the evidence at the trial was the fact that the witness had at different times been known by different names. - *p. 300.*

SAME.—*Newly Discovered Evidence.—Impeachment of Witness.*—A new trial will not be granted to enable the defendant to procure evidence to contradict or impeach a witness. *p. 300.*

SAME.—*Newly Discovered Evidence.—Affidavit of Witness.*—A motion for a new trial on the ground of newly discovered evidence should be accompanied by the affidavits of the witnesses by whom the new matter is to be proved, or an excuse for the failure so to do. *p. 300.*

HOMICIDE.—*Self-Defense.—Defending Relative.—Instruction.*—In a prosecution for homicide, the evidence showed that the deceased retreated as far as it was possible, and was calling upon a sister of defendant to desist from stoning him, when defendant, who had not been present and knew nothing of the difficulty, attacked deceased with a knife inflicting a mortal wound. *Held,* that the court properly refused to give an instruction relating solely to the right of defendant to defend a relative from an unlawful attack. *pp. 301, 302.*

From Marion Criminal Court (33,518); *Fremont Alford,* Judge.

Joseph Spaulding was convicted of murder in the first degree, and appeals. *Affirmed.*

*Franklin McCray* and *Charles McGroarty,* for appellant.

*C. W. Miller,* Attorney-General, *C. C. Hadley, W. C. Geake* and *L. G. Rothschild,* for the State.

Dowling, J.—Upon a trial on an indictment for murder in the first degree, the defendant Spaulding was found guilty, and his punishment was assessed at imprisonment for life. A motion for a new trial was overruled, and judgment was rendered upon the verdict.

The defendant appeals, and assigns for error the ruling on the motion for a new trial. The reasons stated in the motion, and not waived by failure to discuss them, were: (1) That since the trial the defendant has discovered new evidence, material to him, which he could not with reasonable diligence have discovered and produced at the trial; (2) that the verdict is contrary to the evidence; (3) that the court erred in refusing to give an instruction tendered by defendant and numbered one; (4) that the court erred in giving instructions eight, nine, and ten.

This case is a very plain one. The sister of the defendant, in company with one Bud Wilson, met the deceased, Compotello, and a companion named Magdalena, who were Italians, on a narrow sidewalk of a street in Indianapolis, at about half past nine o'clock at night. The parties unintentionally ran against each other. A quarrel followed, and some blows were exchanged by the men. Wilson ran off, and the Spaulding woman, who was with him, threw several stones at the Italians, one or more of which struck them. Someone shouted "Fight! fight! Lizzie Spaulding is in a fight." The defendant, who was near by in a saloon or gambling room, heard the noise, and ran toward the scene of the trouble. A crowd had gathered, composed principally of colored men, and Compotello had retreated to a brick wall, where he stood still, making no demonstration of any kind toward anyone, but appealing to the woman who was throwing stones at them, saying, "Don't, lady, don't." Just at this time his companion, Magdalena, was attacked and knocked down in the street by one of the men who came out of the saloon with the defendant. Without inquiry as to the cause of the trouble, the defend-

ant rushed at Compotello, who was close to. the wall and who made no resistance, and stabbed him in the groin with a knife. The wounded man walked a short distance, bleeding profusely, and then fell upon his face in the street. He died in a few moments from the wound and consequent hemorrhage. Only one wound was found upon his body.

1. The newly discovered evidence for which a new trial was demanded was to the effect that Joseph James, one of the witnesses for the State, who testified that he was present when the homicide occurred, and that the defendant was the person who stabbed Compotello, had visited the county jail after the defendant had been placed there to await his trial, and that the witness had then designated another colored prisoner as the man who struck the deceased; that the witness came to the jail a second time, and that, at his request, four colored prisoners, including the defendant, were "lined up" before the witness, and that he again indicated that one of them, McGinness, struck the fatal blow. The affidavit alleged that these facts could be proved by Kurtz, the jailer, and by Pitts, his assistant, both of whom refused to make affidavits. It was further stated in the motion and affidavit that the witness Joseph James was a man of bad moral character; that the defendant could not discover the facts because the witness had been previously known by the name of Jesse James, and not Joseph James; and that the defendant could impeach the moral character of the witness. No witnesses were named by whom this proof was expected to be made. The motion and the affidavit in support of it also charged that Samuel Shaffer, another witness for the prosecution, who swore on the trial that he saw the defendant strike the deceased, was a man of bad moral character and reputation. This motion and the affidavit of the defendant in support of it were not sufficient to entitle the defendant to a new trial.

The inspection of the colored prisoners by the witness at the jail was enough to apprise the defendant that the subject of the identity of the person who stabbed Compotello was being investigated. It would naturally and reasonably have suggested the question upon cross-examination whether the witness had recognized the defendant at the jail as the guilty man. Again, no sufficient excuse is shown for the failure of the defendant to ascertain the facts concerning the previous history, habits, places of residence, and moral character of the witness Joseph James. Reasonable diligence always requires that such inquiries be made and pursued until some information, at least, is obtained. The fact that the witness was at one time known as Joseph James, and at another as Jesse James, did not prevent such inquiry, or constitute a serious obstacle to its prosecution.

There is yet another objection to the motion and affidavit. They refer to the affidavits of Zula Barnhill and Mrs. James, the wife of the State's witness, neither of which was filed or appears in the record. As these were the only witnesses by whom the matters relied upon in this connection were expected to be proved, their affidavits should have accompanied the motion, or a legal excuse should have been shown for not filing them. *Barnett* v. *State,* 141 Ind. 149; *Vandyne* v. *State,* 130 Ind. 26; *Quinn* v. *State,* 123 Ind. 59; *Shipman* v. *State,* 38 Ind. 549; *Gibson* v. *State,* 9 Ind. 264.

But, further, the object of the evidence said to have been discovered was to impeach and contradict the witness James by showing that he had on two occasions designated another man as the person who stabbed the deceased, and that his moral character was bad. It is well settled that a new trial will not be granted to enable the defendant to procure evidence to contradict or impeach a witness. *Hire* v. *State,* 144 Ind. 359; *Meurer* v. *State,* 129 Ind. 587; *Pennsylvania Co.* v. *Nations,* 111 Ind. 203; *Sutherlin* v.

*State,* 108 Ind. 389; *Hamm* v. *Romine,* 98 Ind. 77; *Morel* v. *State,* 89 Ind. 275.

Finally, the question arising upon the motion for a new trial because of newly discovered evidence was submitted to the court upon the affidavit of the defendant, and the oral testimony of Kurtz and Pitts, the jailer and his assistant, who had declined to make affidavits at the request of the defendant. The court found against the defendant. Its decision was not only not an abuse of its discretion in the matter, but was fully sustained by the evidence presented. The newly discovered evidence in regard to the witness Shaffer related wholly to the impeachment of the witness, and for that reason, as already stated, the refusal of the court to grant the new trial for this cause was not error.

2. The verdict was in strict accordance with the facts proved. Two witnesses, James and Shaffer, testified that the defendant was the man who struck or stabbed Compotello; and another, Mary Burgess, swore that after the homicide the defendant said to a sister, Hattie Spaulding, "I have cut a man over on Washington street about Lizzie. Have you got any money? I want to leave town." The situation and conduct of the Italians at the time the defendant made his attack on Compotello furnished the defendant no pretext for his savage assault. Compotello had literally "retreated to the wall." He was attempting to escape. He was being stoned by defendant's sister, Lizzie Spaulding, and was begging her not to throw rocks at him. He was surrounded by colored men and women, who, if they did not actively assist or sympathize with his assailants, certainly did nothing to rescue or protect him. The defendant did not stop to ask the origin or nature of the trouble. He had his knife open, and with one terrible blow in the groin killed the Italian. There was nothing in his relationship to the woman who was throwing stones at Compotello, nor in her situation when he came upon

the scene, which, in any degree, excused his unprovoked and unnecessary attack upon Compotello. There was simply an opportunity for violence, and he embraced it. So far as he knew or could judge, the man he assaulted was entirely innocent of any wrongdoing, and was himself the victim of an assault. There was here no provocation, real or apparent. The defendant rushed upon the Italian with an open knife in his hand, and with a reckless disregard of the merits of the controversy in which his sister was engaged, he stabbed the man to death. The blow with the knife was not a mere chance cut, but was directed to one of the most vulnerable, exposed, and vital parts of the body. The evidence sustained the charge contained in the indictment in every particular, and authorized the jury to find, as they did, that the killing was felonious and with premeditated malice.

3. Instruction one, asked for by the defendant and refused by the court, related exclusively to the right of self-defense, and the right to defend a relative, or member of one's family, from an unlawful attack. It was not applicable to any evidence in the case, and was calculated to mislead the jury. Instructions thirteen and fifteen fully and fairly stated the law of self-defense, and the rule in regard to the right of a brother or other near relative to defend a sister, or other member of his family, from an unlawful injury at the hands of an assailant. The court did right in refusing to give the instruction requested. *Hinshaw* v. *State,* 147 Ind. 334.

We find nothing objectionable in instructions eight, nine, and ten given by the court.

The judgment was clearly right upon the evidence, and we find no error in the record. Judgment affirmed.