## The John Kindler Company *v.* The First National Bank of Fond du Lac, Wisconsin.

[No. 8,611. Filed June 2, 1915. Rehearing denied December 9, 1915. Transfer denied February 17, 1916.]

1. Bills and Notes.—*Defenses.—Pleading.—Non Est Factum.*— In an action by the endorsee of a note, an answer in general denial, and a special paragraph to the effect that defendants executed a note to payee, but that when delivered it did not contain certain words, that such note was subsequently changed by the addition of such words without the knowledge or consent of defendants, and that defendants paid the payee without knowledge that the note had been changed or transferred, each being verified, had the force of a plea of *non est factum.*   p. 81.

2. Bills and Notes.—*Alteration.—Bona Fide Purchaser.—Evidence. —Verdict.—Conclusiveness.*—The fact that the place of payment, the rate of interest, and the time of the commencement of interest, are written in a note in different handwriting than that of the other written portions thereof, does not as a matter of law put a purchaser thereof on inquiry as to whether it has been altered; hence where there was evidence to show that after the execution and delivery of a note blank spaces therein were filled by the payee's agent pursuant to a general understanding with the maker, though without the latter's specific knowledge, so as to show the place of payment, the rate and time for commencement of interest, after which through a series of endorsements it reached plaintiff as a purchaser for value, a verdict for plaintiff was conclusive as against the objection that plaintiff was not a *bona fide* purchaser without notice.   p. 82.

3. Bills and Notes.—*Alteration.—Authority of Payee.—Rate of Interest.*—The payee of a promissory note may change the interest rate as expressed therein to make the note conform to what the parties agreed or intended it should have been, and such change will not amount to a material alteration.   p. 86.

4. Bills and Notes.—*Alteration.—Inserting Rate of Interest.— Effect.*—In view of the fact that under §7952 Burns 1914, §5200 R. S. 1881, a note without stipulation as to interest would draw interest at six per cent from maturity, the act of the payee in filling blank spaces therein to show that the note bears interest at such rate from maturity can not be deemed a material alteration.   p. 86.

5. ALTERATION OF INSTRUMENTS.—*Material Alteration.*—The fact that the burden of the complaining party has not been enlarged is not necessarily the test of whether the alteration of an instrument was material, since if the legal effect of the instrument is thereby changed the alteration may be material notwithstanding the burden remains the same. (*Holthouse* v. *State* [1911], 49 Ind. App. 178, disapproved in part.) p. 87.

6. BILLS AND NOTES.—*Alteration.—Evidence.—Implied Authority.*— In an action on a note, claimed by defendant to have been altered by inserting the place of payment and the rate and time of commencement of interest, evidence showing that during a long course of dealing with payee the defendant of the executed notes containing blanks with reference to such provisions which blanks were later filled by payee, and that as such notes matured the defendant paid them without objection, etc., warranted the jury in finding that the payee had at least implied authority to fill such blanks in the note sued on. p. 87.

7. BILLS AND NOTES.—*Alteration.—Implied Authority.*—The authority of a payee to fill blank spaces in a note may be implied from circumstances and from facts proved. p. 89.

From Kosciusko Circuit Court; *Francis E. Bowser,* Judge.

Action by The First National Bank of Fond du Lac, Wisconsin, against The John Kindler Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*C. W. Watkins,* *R. A. Kaufman* and *C. A. Butler,* for appellant.

*Lesh & Lesh, Frank O. Switzer* and *Lemuel W. Royse,* for appellee.

CALDWELL, J.—Action on a promissory note, brought by appellee as endorsee and holder against appellant as maker. It is alleged that The John Kindler Company is a partnership, and that Elizabeth Kindler is a member thereof. A copy of the note is exhibited with the complaint and is as follows:

"$1,074.00.          Anderson, Ind., Dec. 27, 1909.
June 1, 1910, after date we or either of us promise to pay to the order of the Anderson

Carriage Manufacturing Company Ten Hundred Seventy-Four 00/100 Dollars. Negotiable and payable at Citizens Bank of Anderson, Ind. Value received without relief whatever from valuation or appraisement laws, with interest at 6 per cent after maturity and attorney's fees. The drawers and endorsers severally waive presentment, protest, notice of protest and non-payment of this note.

John Kindler Company,

P. O. Huntington, Ind.　Charles P. Kindler."

The first paragraph of answer is a verified general denial. The amended second paragraph is to the effect that appellant executed a note to

1.　said payee, but that when signed and delivered, it did not contain the words "Citizens Bank of Anderson, Ind.," the word "maturity," or the figure "6" before the words "per cent"; that afterwards, and without the knowledge or consent of appellant, the note was changed by the addition of such elements; and that appellant paid the note to the payee without any knowledge that it had been changed or transferred. This paragraph also is verified. The first and second paragraphs have the force of *non est factum*. The amended third paragraph of answer amounts to a plea of payment to the carriage company without notice that the note had been transferred. The first paragraph of reply is a general denial to said second and third paragraphs of answer. The second paragraph of reply, directed to all three paragraphs, pleads in general terms the facts constituting appellee a good-faith holder for value, and in addition, is to the effect that when appellee purchased the note it contained the alleged omitted elements, and that they appeared in ordinary black ink and in appropriate blank spaces apparently intended for such elements, and

that it had no notice or knowledge that the note had been changed after its execution or of any fact or circumstance impairing its validity, or that there was any defense to it; that there was nothing of a suspicious character appearing on the face of the note, and that appellee believed in good faith when it purchased the note, that it had been executed in the form sued on.

A trial by jury resulted in a verdict and judgment for appellee. The errors assigned are that the court erred in overruling the motion for a new trial, and in overruling the demurrer to the second paragraph of reply. Under the first assignment, the sufficiency of the evidence and the action of the court in refusing certain instructions and in giving others is challenged.

The evidence, so far as material, is as follows: The note was given for carriages bought by appellant of the payee, The Anderson Carriage Manufacturing Company. Charles P. Kindler whose authority is not questioned, acted for appellant, and N. A. Crawford, sales manager of the payee, acted for it in the transaction. The note was signed and delivered at the office of the carriage company. Crawford prepared it by using a printed blank. When signed and delivered, it was in form as exhibited except that after the printed words "negotiable and payable at" there was a long blank space, and a blank space after the printed words "with interest at" and also after the printed words "per cent after". Crawford placed the note in the payee's safe in such incomplete condition. Subsequently Berkshire, the payee's bookkeeper, filled in such blank spaces in the absence of appellant, and without any specific knowledge on its part that the same had been or was to be done, by inserting therein the words and figure complained of. The note was

then regularly negotiated by the payee, and after several endorsements came into the hands of appellee in due course, and under such circumstances as to constitute appellee a good-faith holder for value, except it be for the fact that a part of the written portion of the note appeared in the handwriting of Crawford and a part in the handwriting of Berkshire. Charles P. Kindler testified that there was an understanding that all notes given by appellant to the carriage company were to draw six per cent interest after maturity.

The argument is advanced that the fact that two handwritings appeared in the body of the note was sufficient to put appellee on inquiry in the purchase of the note, and therefore to undermine appellee's standing as a good-faith purchaser for value as it might otherwise exist. The evidence on this question was heard by the jury, and the note was submitted to them for inspection. The circumstances were such as to bring the question within the province of the jury as a question of fact, and it having determined it in appellee's favor, its finding is binding on us. In other respects the evidence tending to show that appellee was a good-faith purchaser for value was uncontradicted, and the jury having so found, we shall further consider the case from that viewpoint.

*Bowen* v. *Laird* (1906), 166 Ind. 421, 77 N. E. 852, is closely in point here. That case turns on the sufficiency of the reply to an asnwer of *non est factum*. The reply in that case admitted that the note when executed was not in the same condition as when sued on, and alleged that when executed it was as follows, omitting date and signature: "One year after day, I promise to pay to the order of Bernard & Hunter $144, at ——————— value received. Interest at 8 per cent per annum after

due until paid.'' Further facts were averred respect-
ing the filling of the blank in the note by the inser-
tion of the name of a bank of this State, and respect-
ing the circumstances under which the holder became
the owner of the note, very similar to the facts shown
by the evidence here, the chief difference being that
it was alleged in said reply that the blank was filled
in the same handwriting as that appearing in the
other portions of the note. As we have indicated,
the mere fact that the note involved in the case at
bar contained the different handwritings could not,
as matter of law, be held to constitute a suspicious
circumstance disclosed by the face of the note, effec-
tive to destroy appellee's claim of a good-faith hold-
ing for value. Rather the existence of such circum-
stance was evidentiary matter for the consideration
of the jury. The fact that the jury considered it and
determined the involved question in favor of appel-
lee has the effect of removing the distinction that
might otherwise exist between the Bowen case and
the case at bar. The court, in the Bowen case, in
holding the reply sufficient and that under the facts
therein alleged the note was valid in the hands of a
good-faith purchaser for value, reviews the authori-
ties, and after stating that the insertion of the name
of the bank constituted such a material alteration as
to invalidate the note in the hands of the payee, for
the reason that thereby the character of the instru-
ment was changed, uses this further language, applic-
able here: ''Appellee executed to Bernard & Hunter
a perfect note, except when delivered it contained the
word 'at' standing at the left end of a blank line and
space extending across the paper. This space
after the word was unscored and left blank, and
appeared in the instrument as indicating an inten-
tion to fix the place of payment, but which had not
been determined when the note was placed in the

hands of the payee. Without cancelation the word and line were meaningless upon any other theory. If the purpose had been to make the note payable wherever it might be found, when due, it could have been clearly accomplished only by marking out the word 'at' and the following line. In any aspect, appellee delivered his note with an uncanceled word and space which irresistibly suggested incompleteness in the instrument for want of the place of payment, and which made it easy to effect an alteration without exciting the suspicion of a reasonably cautious person." The Supreme Court in the Bowen case disposes of such cases as *McCoy* v. *Lockwood* (1880), 71 Ind. 319, *Cronkhite* v. *Nebeker* (1882), 81 Ind. 319, 42 Am. Rep. 127, cited by appellants, by applying a distinction expressed in the following language: "When a note is, before delivery, made complete in accordance with its general character, and is free from words and unscored blanks reasonably indicating incompleteness, the unauthorized addition of words or figures by the filling of unoccupied blanks or parts of blanks, or otherwise, is such an alteration, if material, as will make the paper void in the hands of the forger, or any one claiming under him." In each of those cases the note as executed bore on its face no evidence of incompleteness. In the Bowen case the court cites, among other decisions, as controlling under the circumstances presented there, *Marshall* v. *Drescher* (1879), 68 Ind. 359, and *Cason* v. *Grant County Deposit Bank* (1895), 97 Ky. 487, 31 S. W. 40, 53 Am. St. 418. The facts in each of these cases are very similar to those presented in the case at bar. In the Cason case the note when executed was in the following form: "Three months after date I promise to pay to the order of G. W. Siddons $200, at ——————————— value received." In that

case, the holder subsequently filled the blank by inserting the name of a bank, and the court, after reviewing the authorities, held the note not thereby to have been invalidated in the hands of a good-faith purchaser for value.

It is true that in the Bowen case the only point involved is respecting the inserting of the name of a bank in the note. The reasoning however is just as applicable to the other alleged alterations here which consisted in inserting the rate of interest and the word "maturity". But as to such additional matters, Charles P. Kindler testified as we have stated that there was an understanding between the parties that all notes executed by appellant to said payee should bear six per cent interest from maturity. It is expressly held by the Supreme Court that the payee of a promissory note may change the interest rate as expressed therein to make the note conform to what the parties thereto agreed or intended it should have been, and that such a change does not amount to a material alteration. *Osborn* v. *Hall* (1903), 160 Ind. 153, 66 N. E. 457. For a collection of cases *pro* and *con* on the question of the right to change a written contract merely to correct a mistake, and that the weight of authority is in harmony with *Osborn* v. *Hall, supra*, see note to *Merritt* v. *Dewey* (1905), 2 L. R. A. (N. S.) 217. Moreover, the note as executed would have drawn interest at six per cent from maturity. §7952 Burns 1914, §5200 R. S. 1881; *Sanderson* v. *Trump Mfg. Co.* (1913), 180 Ind. 197, 102 N. E. 2. It follows that the insertion of the rate and the word maturity did not change the effect of the note, and the alteration in this respect was not material. 2 C. J. 1199 and notes; *Fry* v. *P. Bannon Sewer Pipe Co.* (1913), 179 Ind. 309, 320, 101 N. E. 10; *Holthouse* v. *State, ex rel.*

(1912), 49 Ind. App. 178, 184, 97 N. E. 130. Some language used in the concluding part of the

5. opinion in the case last cited respecting the test by which to determine whether a particular alteration is material was apparently inadvertently used, and being erroneous is disapproved. If the alteration is such as to transform the instrument so that it is not the same in legal effect as the instrument executed, the alteration may be material, even though the burden of the complaining party is not thereby enlarged. *Johnston* v. *May* (1881), 76 Ind. 293; *Coburn* v. *Webb* (1877), 56 Ind. 96, 26 Am. Rep. 15; 2 C. J. 1174 and notes.

The evidence sustains the verdict. A further consideration confirms us in such conclusion. Thus, there was other evidence to the following

6. effect: Appellant, by Charles P. Kindler, had executed to the Anderson Carriage Manufacturing Company prior to the execution of the note in suit a large number of notes given for carriages purchased. In many instances these notes were forwarded to appellant and apparently executed partially in blank and returned by mail. Others were executed at the office of the payee. Crawford testified that at one time Charles P. Kindler in conversation with an officer of the carriage company directed that all notes given by appellants be made payable at the Citizens Bank of Anderson, Indiana, without regard to whether he gave specific instructions in any case. This evidence was contradicted, and were we permitted to weigh the evidence, it is possible that we should have doubts as to the preponderance on that question. Wheelock, who was secretary of the carriage company from its organization in 1899 until it went into the hands of a receiver in 1910, testified by deposition that John Kindler, father of Charles and form-

erly the active manager of The John Kindler Company, paid cash for the earlier purchases of carriages; that later notes were given, and that John Kindler directed that such notes be made payable at Anderson banks rather than Huntington banks, as he did not want the notes to pass through the latter banks; that after the death of John Kindler his son Charles becamse manager of the Kindler business, and continued the custom established by his father; that it was a frequent occurrence for Charles to execute notes to the carriage company for appellant, blank as to place of payment, rate of interest and when interest should commence, which blanks were afterwards filled by the payee, the notes negotiated, and thereafter paid in due course without objection. Appellant paid such notes by drawing checks payable to the carriage company, whereupon the carriage company took up the notes from whatever bank held them, and forwarded them to appellant. Such notes indicated by endorsements that they had been negotiated; that this method of transacting business was adopted in order that such notes might not pass through Huntington banks. A number of such notes that had been paid were introduced in evidence. All these notes, as appeared by their face, bore six per cent interest from maturity. In one the blank intended to indicate the place of payment had not been filled. Eleven of them showed that they were payable at Anderson banks and one of them at a Huntington bank. Sometime after the payment of the last named note, appellant wrote a letter to the carriage company, acknowledging the receipt of a note for execution, and in such letter directed that the notes be made payable at Anderson and, "that it would be more favorable with us, instead of them being paid through one of our banks." Charles P. Kindler testified that while he

executed to the carriage company for appellant a large number of notes, that none of such notes when he executed them indicated on their face that they were payable in bank, and that he did not direct that they be made payable in bank, and that he neither directly nor indirectly authorized any one to fill blanks to that effect. He admitted that all these notes, except one, executed by him blank as to place of payment came back to him in due course cancelled and showing on their face that such blanks had been filled, and on the back that they had been negotiated. He explained his apparently inconsistent position, however, by stating that he did not notice that such blanks had been filled or that the notes had been negotiated. This evidence is amply sufficient to warrant the jury in finding that the payee had at least implied authority to fill such blanks. *Marshall* v. *Drescher, supra.* "Such authority may be implied from circumstances and from the facts proved, when these facts all taken together and fairly considered justify the inference. It is after all a mere question of assent, and assent by implication, when fairly and legally inferred is actual and effective assent as much so as when direct authority is shown by parol." 1 R. C. L. 1013. See, also, *Palacios* v. *Brasher* (1893), 18 Colo. 593, 34 Pac. 251, 36 Am. St. 305; *Hopps* v. *Savage* (1888), 1 L. R. A. 648, note.

It is apparent from our discussion of legal propositions in connection with our consideration of the evidence that the court did not err in overruling the demurrer to the second paragraph of reply.

Some question is made respecting certain instructions tendered by appellant and refused by the court, and also respecting certain instructions given by the court on its own motion. We would not feel

justified in extending this opinion by setting out such instructions and discussing them. It is sufficient to say that we have carefully considered the tendered instructions and also the instructions given by the court as to all questions raised concerning them, and from such consideration it is apparent that the jury was correctly and clearly instructed. Judgment affirmed.

NOTE.—Reported in 109 N. E. 66. As to law governing altered paper, see 4 Am. St. 25. As to implied authority to fill in blanks so as to complete signed instrument, see Ann. Cas. 1912 B 1010. See, also, under (1) 8 Cyc 155, 201; (2) 7 Cyc 950; (3) 7 Cyc 619-622; (4) 7 Cyc 620, 622; (5) 2 Cyc 180; (6) 2 C. J. 1289; 2 Cyc 252; (7) 2 C. J. 1243; 2 Cyc 159.