AMERICAN FURNITURE MART BUILDING CORPORATION v. W. C. REDMON, SONS AND COMPANY.

[No. 26,518. Filed May 1, 1936.]

F. E. Schortemeier, Hurd J. Hurst, Willard B. Gemmill and R. A. Hendrickson, for appellant.

Rhodes & Calloway and Oscar R. Brown, for appellee.

HUGHES, J.—This was an action by the appellant against the appellee to recover on a written lease contract. It was alleged in the complaint of appellant that on March 5, 1928, the appellant, an Illinois Corporation, leased to the appellees, of Peru, Indiana, a certain space in a building owned by appellant, in Chicago, that appellees agreed and contracted to pay appellant for the use and occupancy of said space the sum of one thousand seven hundred and fifty-five ($1,755.00) dollars each year for a period of five years; that appellee has failed and refused to pay one thousand and thirty dollars and sixteen cents ($1,030.16) which is due appellant. It was alleged in the complaint that the lease was executed in the City of Chicago and was to be performed in said city; that at the time of the execution of said lease there was in force in the State of Illinois a statute of said state reading as follows:

"Any person having a debt bona fide due may confess judgment by himself or attorney duly authorized, either in term time or vacation, without process. Judgments entered in vacation shall have like force and effect, and from the date thereof become liens in like manner and extent as judgments entered in term."

Section 88, p. 1953, Cahill Illinois R. S. 1927.

The lease is very lengthy and it will serve no useful purpose to set it out in full in this opinion. The part which is important for our consideration is as follows:

"AND THE LESSEE, pursuant to a resolution of its board of directors first duly passed, has authorized the undersigned to execute this lease and hereby irrevocably constitutes John D. Black or Winston, Strawn and Shaw, or any attorney of any court of record, attorney for it in its name, on default of any of the covenants herein, to enter lessee's appearance in any court of record, waive process and service thereof, and to confess judgment from time to time in any action brought by the lessor, its successors or assigns, for any rent which may be then due by the terms of this lease, including extensions hereof, with interest, costs and thirty dollars attorneys' fees in each case, and to waive and release all errors and all right of appeal any such judgment or judgments and to consent that execution may immediately issue thereon."

A demurrer was filed to the complaint and sustained by the lower court. The appellant, plaintiff below, refused to plead further and judgment for appellees.

The error relied upon for reversal is that the court erred in sustaining the demurrer to appellant's complaint.

It is to be observed that the appellant did not rely upon the provision in the lease whereby the appellee agreed, consented and authorized an attorney for appellant, on default of any of the covenants of the lease, to enter lessee's appearance in any court of record, waive process and service thereof and to confess judgment in any action brought by the lessor for any rent due by the terms of the lease and to waive and release

all errors and all right of appeal from any judgment and to consent that execution may immediately issue thereon. The complaint was filed in the Miami Circuit Court, summons was issued and served upon appellees and duly returned by the sheriff of said county, and appellees entered their personal appearance to the complaint.

Appellees, defendants below, in their memorandum to their demurrer filed to the complaint and in their brief assert that the plaintiff's complaint fails to allege facts or law entitling it to recover under the terms of the contract sued upon in the courts of Illinois, and that it is not enforcible there. They cite and rely largely upon the case of *Little* v. *Dyer* (1891), 138 Ill. 272, 27 N. E. 905. When this case is considered in the light of *Scott* v. *Mantonya* (1897), 164 Ill. 473, 45 N. E. 977; *Fortune* v. *Bartholomei* (1896), 164 Ill. 51, 45 N. E. 274; *Fortune* v. *Bartholomei* (1895), 62 Ill. App. 290, we think the appellees are in error as to their contention.

Appellees also contended by their demurrer that the lease contract is void under Ch. 66, p. 174, and Ch. 227, p. 656, of the Acts of 1927. Chapter 66 is as follows:

"Section 1. *Be it enacted by the general assembly of the State of Indiana,* That it shall be unlawful to execute or procure to be executed as part of or in connection with the execution of any negotiable instrument, or other written contract to pay money, and before a cause of action thereon shall have accrued, any contract, agreement, provision or stipulation giving to any person or persons a power of attorney or authority as attorney for the maker or endorser thereof, in his name to appear in any court of record, and waive the service of process in an action to enforce payment of money claimed to be due thereon, or authorizing or purporting to authorize an attorney or agent, howsoever designated, to confess judgment on such instrument for a sum of money to be ascertained in a manner other than by action of the court upon a hearing after notice to the debtor, whether with or

without an attorney fee, or authorizing or purporting to authorize any such attorney to release errors and the right of appealing from such judgment, or to consent to the issue of execution on such judgment. Any and all contracts, stipulations and powers of attorney given or entered into before a cause of action on such promise to pay, shall have accrued, shall be void."

"Sec. 2. No execution, or other process, shall be issued out of any court in this state to aid or enforce the collection of any judgment which may be rendered upon any judgment taken in any other state, or foreign country, and which judgment was founded or based upon any negotiable instrument, or contract, containing any such agreement, stipulation, or provision, as herein prohibited and declared void, in all cases where the court rendering such foreign judgment, obtained or attempted to obtain, jurisdiction of such judgment debtor or debtors, in whole or in part, by virtue of any such contract, agreement, or stipulation, as in this act declared void and prohibited. No such judgment shall be or become a lien upon real estate."

Chapter 227 is as follows:

"Section 1. *Be it enacted by the general assembly of the State of Indiana,* That any negotiable instrument, or other written contract to pay money, which contains any provision or stipulation giving to any person any power of attorney, or authority as attorney, for the maker, or any indorser, or assignor, or other person liable thereon, and in the name of such maker, indorser, assignor, or other obligor to appear in any court, whether of record or inferior, or to waive the issuance or personal service of process in any action to enforce payment of the money, or any part claimed to be due thereon, or which contains any provision or stipulation authorizing or purporting to authorize an attorney, agent, or other representative, be he designated howsoever, to confess judgment on such instrument for a sum of money when such sum is to be ascertained, or such judgment is to be rendered or entered otherwise than by action of court upon a hearing after personal service upon the debtor, whether with or without attorney's fee, or which contains any provision or stipulation authorizing or purporting to authorize any such attorney, agent, or representative to release errors, or the right of ap-

peal from any judgment thereon, or consenting to the issuance of execution on such judgment, is hereby designated, defined and declared to be a cognovit note. Any person, natural or corporate, who directly or indirectly shall procure another, or others, to execute as maker, or to indorse, or assign such cognovit note, or whoever being the payee, indorsee, or assignee thereof shall accept and retain in his possession any such instrument, or whoever shall conspire or confederate with another, or others, for the purpose of procuring the execution, indorsement or assignment of any such instrument, or whoever shall attempt to recover upon or enforce within this state any judgment obtained in any other state or foreign country based upon any such instrument, shall be deemed guilty of a misdemeanor and upon conviction shall be fined in any sum not less than fifty dollars ($50), and not exceeding five hundred dollars ($500), to which may be added imprisonment for not less than thirty (30) days and not to exceed six months at the Indiana state farm."

The question presented in the instant case is whether or not the contract, executed and performed in Illinois, and giving to attorneys designated the power, upon default of any covenants in the contract, to enter lessee's appearance in any court of record, waive process and service thereof and confess judgment, may be enforced in this state in view of the statutes of this state heretofore set out.

The contract was executed in Illinois and was to be performed there. It was a valid and binding contract under the laws of Illinois. May it be enforced in Indiana? We think it may be said, without fear of contradiction, that a contract that is valid where made and that does not involve any moral turpitude and is not pernicious and detestable will be enforced in a state although the laws of such state forbid the making of such contract. The law is well stated by Greenhood in his treatise, "The Public Policy of Contracts," p. 46. He says:

"When a contract is valid under the public policy of the State where made, it will be enforced in another State, although the same would be by the statute laws of the latter State be void (a), unless its enforcement would exhibit to the citizens of the State an example pernicious and detestable."

It is to be remembered that none of the cognovit features of the contract are attempted to be enforced in this State. The appellees were brought into court in the regular manner as provided by the Indiana statutes. The record shows service of summons and that defendants appeared. We have found no authority in this or any other state which prevents recovery upon a contract, which contains cognovit features and valid where made, if the cognovit features are not relied upon in the action to recover. We think it is clear that under said chapter 227, *supra,* no criminal proceeding could be sustained against a party who brings an action upon a cognovit contract, valid in a state where made, and not relying upon the cognovit features of the contract, but proceeding upon proper issuance and service of process. The act does not pretend to make it a crime or misdemeanor to bring an action upon such a contract when there is a proper issuance and service of process when the cognovit features are abandoned.

In the case of *Garrigue* v. *Kellar* (1905), 164 Ind. 676, 74 N. E. 523, it appears that the appellant, Lida M. Garrigue, with her husband, executed a note in Illinois where at that time she had the right to execute a note as surety. Suit was brought in this state upon the note and she relied upon the statute of this state which provided at that time that a contract of suretyship by a married woman was void. It was stated by the court in this case that if a contract is valid in the state where it is executed, it is valid everywhere and cited a long list of cases. It further states (p. 688) :

". . . The notes being valid under the laws of Illinois are equally valid and enforceable in this state, by the principle of comity, unless their enforcement

would be contrary to good morals or in violation of public policy or forbidden by positive law. It is clear that a contract of suretyship by a married woman executed in a foreign state, is not in itself immoral, nor is its enforcement forbidden by our laws. . . . Almost all of the states of the Union have removed substantially all the disabilities of married women to contract, and in the interest of commerce and business, and upon the principle of comity among the states, have sustained and enforced contracts validly executed elsewhere, although the particular contract, if executed within such states, would have been unauthorized and invalid."

Under the facts in the instant case we can not say that the enforcement of the contract, in the manner pursued, would be contrary to good morals or in violation of public policy, and it is not forbidden by any positive law.

It was not the purpose of the legislature in passing the Acts under consideration to assist one in perpetrating a fraud. If the Acts are to be construed as the appellants would have us construe them, fraud could easily be perpetrated in many ways. Persons from this state could go across the Illinois line, borrow money from Illinois bankers, execute cognovit notes there held to be valid, return to Indiana and when due refuse to pay for the reason they were in violation of the Indiana cognovit statute, although none of the cognovit features of the act were relied upon for a recovery. We do not think any such procedure was contemplated by the Act.

. In the case of *International Harvester Co.* v. *McAdam* (1910), 142 Wis. 114, 124 N. W. 1042, 26 L. R. A. (N. S.) 774, the court said (p. 120) :

"A contract under the foregoing is not, necessarily, contrary to the public policy of a state, merely because it could not validly have been made there, nor is it one to which comity will not be extended, merely because the making of such contracts in the place of the forum is prohibited, general statements to the contrary notwithstanding. In *Milken* v. *Pratt, supra* (125 Mass. 374), the court remarked substantially, even a contract ex-

pressly prohibited by the statutes of the state in which the suit is brought, if not in itself immoral (the term 'immoral' being used in the broadest sense), is not, necessarily, nor usually, deemed so invalid that the comity of the state, as administered by its courts, will refuse to entertain an action under all circumstances to enforce it. There must be something inherently bad about it, something shocking to one's sense of what is right as measured by moral standards, in the judgment of the courts, something pernicious and injurious to the public welfare."

In the instant case it can not be said that there is anything inherently bad or shocking to one's sense of right for the appellant to be permitted to sue upon the contract in question and in the manner pursued. Nor is there anything pernicious and injurious to the public welfare. Except for the cognovit features there is nothing unusual about the contract and when these features are ignored, as in the instant case, it appears to us that there is no reason why an action to enforce the same can not be maintained.

The case of *Vandalia R. R. Co.* v. *Kelley* (1917), 187 Ind. 323, 326, 119 N. E. 257, is cited and relied upon by appellees. We have no criticism to offer as to the rules of law laid down in that case but we do not think it is applicable here. It is there stated:

"The rule of comity does not require the enforcement of a contract entered into in another state when it is in violation of a positive legislative enactment which is declarative of the public policy of the forum."

In the instant case, there is no positive legislative enactment that a recovery can not be had in this state upon a valid cognovit contract made in another state for the payment of money where there is no attempt to pursue the cognovit features of the contract and the same are ignored.

The title of the Act, approved March 10, 1927, being Chapter 227, is as follows:

"An Act entitled an act defining a cognovit note, prohibiting their execution and procurement, and fixing a penalty for violation thereof."

The title and the body of the Act clearly refers to the execution of a note in Indiana. It could not be construed to refer to a note executed in another state. And it is to be noted that Section 1 of Chapter 66 clearly refers to the execution of a contract in this state. It says:

"That it shall be unlawful to execute or procure to be executed . . ."

This language could only refer to the execution of an instrument in this state. Neither of the Acts could have any extra-territorial effect. As the contract was executed in Illinois, and valid as to its cognovit features in that state, we see no reason for denying an action to enforce the same in this state where the cognovit features are not relied upon. We find no provision in either Act inconsistent with this interpretation.

The appellant insists that the Acts in question can only relate to "contracts to pay money" such as negotiable instruments and do not relate to such a contract as here involved. We do not agree to this contention. Each Act says:

"Any negotiable instrument or other written contract to pay money . . ."

This language is sufficiently broad to cover any contract to pay money whether it is a negotiable instrument or other written contract.

The lower court erred in sustaining appellee's demurrer to the complaint.

Judgment reversed.