PAULAUSKY ET AL. *v.* POLISH ROMAN CATHOLIC UNION OF AMERICA ET AL.

[No. 27,675. Filed February 9, 1942.]

444

*Willard B. Van Horne, Winslow Van Horne,* and *Willard B. Van Horne, Jr.,* all of East Chicago, for appellants.

*Andrew H. Sambor,* of East Chicago (*Stanley T. Kusper* and *Joseph T. Wasko,* both of East Chicago, of counsel), for appellees.

SWAIM, J.—The appellants, Paulausky and Paulausky, are the owners in fee simple of certain real estate located in Lake County, Indiana, which real estate they acquired, January 30, 1930, from the appellees, Matusik and Matusik, to whom it had been conveyed, April 22, 1926, by the appellees, Sekulski and Sekulski.

On December 14, 1922, the Sekulskis, while they were the owners of said real estate, obtained a loan of $15,000.00 from the appellee, Polish Roman Catholic Union of America, which loan was evidenced by a promissory note and was secured by a mortgage on said real estate. The subsequent transfers to the Matusiks and then to the Paulauskys were each made subject to this mortgage and the amount secured thereby was considered as a part of the purchase price in each of the transfers. Both the note evidencing the loan and the mortgage securing it were executed and made payable in the City of Chicago, in the State of Illinois, and were prepared on printed forms which had been printed for the mortgagee.

In September, 1933, payment of the principal and interest on said note and mortgage were in default and foreclosure proceedings were instituted in the Superior Court of Lake County, Indiana. The first two paragraphs of the complaint asked for a personal judgment on the note and the foreclosure of the mortgage. A third paragraph of complaint, filed in June, 1936, asked only for the foreclosure of the mortgage.

To the complaint there was filed an answer and cross-complaint in eight paragraphs. All affirmative paragraphs of answer were addressed to an alleged fraudulent and material alteration of the $15,000.00 note by

the mortgagee after its execution and delivery and without the consent of the makers of said note. The various paragraphs of answer and cross-complaint asked that the note and mortgage be adjudged void; for damages for the unlawful detention of the note and mortgage; that the mortgage be declared satisfied and the clerk ordered to enter satisfaction thereof; for judgment for the amount paid on the note and mortgage subsequent to the alleged alteration; and that liens on the said real estate, subsequent in point of time, be declared to be prior liens.

The alteration complained of was the striking out of the last paragraph of the note which read as follows:

"And any attorney-at law is hereby irrevocably authorized to appear for the undersigned in any Court of Record in term time or vacation, at any time after maturity and confess a judgment in favor of the holder of this note, for such amount as may be unpaid thereon, together with costs and reasonable attorney's fees, and to waive and release all errors which may intervene in any such proceedings; hereby ratifying and confirming all that such attorney may do by virtue hereof."

The findings of the trial court pertinent to a decision here are: that the last payment of interest on said note and mortgage was made on June 13, 1931, and no further payment of either principal or interest was thereafter made; that at the time of the trial there was due, for principal and interest on said note, the total sum of $20,747.50; that after the default in the payment of interest on said note, the mortgagee delivered said note to its general counsel for the purpose of collecting and enforcing said note and mortgage; that thereafter, in 1933, the note and mortgage were forwarded by said general counsel to local counsel in Indiana for foreclosure and collection; that while the

note and mortgage were still in the office of the general counsel in Chicago, Illinois, he caused his stenographer to strike out the cognovit paragraph in question; that the cognovit paragraph was a part of the printed note form; that at least twenty-four or twenty-five other mortgages belonging to appellee, Polish Roman Catholic Union of America, which were in default, had also been forwarded by said general counsel to local counsel in Indiana for foreclosure and collection and in each instance, as in this case, the cognovit provision of the note was struck out in the office of the general counsel before the papers were forwarded to local counsel in Indiana for foreclosure; and that said alteration was not fraudulently made.

The court further found that at the time of the alteration there was in force in Illinois, as a part of the Negotiable Instrument Law of that state, a statute which provided as follows:

"Where a negotiable instrument is fraudulently or materially altered by the holder without the assent of all the parties liable thereon, it is avoided except as against a party who has himself made, authorized or assented to the alteration and subsequent indorsers. . . .

"Any alteration which changes:
"1. The date.
"2. The sum payable, either for principal or interest.
"3. The time or place of payment.
"4. The number or relations of the parties.
"5. The medium or currency in which payment is to be made.
"Or which adds a place of payment where no place of payment is specified, or any other change or addition which alters the effect of the instrument in any respect, is a material alteration."

This Illinois statute is practically the same as our Indiana statute. § 19-901, § 19-902, Burns' 1933, § 12942, § 12943, Baldwin's 1934.

The court concluded as a matter of law: (1) that all matters concerning the execution and delivery, the validity, interpretation, effect and capacity of the parties to execute the note in question were governed by the laws of the State of Illinois; (2) that all matters respecting the remedy, the bringing of the suit, service of process, and admissibility of evidence in this action were governed by the laws of the State of Indiana; (3) that the striking out of the cognovit provision of said note was an immaterial alteration and was not fraudulently made; (4) and (5) that the lien of the plaintiff's mortgage was prior and paramount to the lien of the two junior lienholders named as defendants to the action; (6) and (7) that the defendants, Paulausky and Paulausky and Matusik and Matusik, should take nothing by their affirmative paragraphs of answer; (8) and (9) that the law was with the plaintiff and against each of the defendants; and (10) that the plaintiff was entitled to the foreclosure of its mortgage as against all defendants and cross-complainants.

The court thereupon entered judgment foreclosing said mortgage.

Appellants assign as error that the court erred: (1) in allowing the appellees to file amended answers to certain interrogatories; (2) in overruling their motion for a new trial; and (3) in each of its conclusions of law.

As to the first assignment of error it would seem to be within the discretion of the trial court to permit the filing of an amended answer to an interrogatory. Interrogatories are matters connected with the pleadings. In chancery such interrogatories

were always regarded as a part of the pleadings, and since we have adopted the practice from chancery it follows that we should treat interrogatories as part of our system of pleading. *Cates* v. *Thayer* (1883), 93 Ind. 156. The granting of permission to amend pleadings is within the discretion of the trial court and consequently it should be within the discretion of the court to permit the amendment of answers to interrogatories.

In *Pool* v. *Harrison* (1850), 18 Ala. 514, 518, the court said:

"We think the court had the discretionary power to allow . . . him to amend the answer filed by him, there appearing a sufficient excuse, in the estimation of the primary court, for granting such indulgence. This being the exercise of a discretion on the part of the court below, this court will not reverse it."

See also *Investment Co.* v. *Trueman* (1912), 63 Fla. 184, 57 So. 663; 27 C. J. S. § 63, p. 93. We see no abuse of discretion in the trial court permitting the filing of the amended answers.

Appellants contend that the court erred in holding that the alteration of the note, by striking out the cognovit provision thereof, was not a fraudulent and material alteration. The appellants insist that the alteration was both material and fraudulent. The court found that the alteration was not fraudulent. We believe this finding was sustained by the evidence. There was sufficient evidence to support the inference drawn by the court that the cognovit provision was struck out in the office of the general counsel preparatory to sending the papers into Indiana for the foreclosure of the mortgage. The cognovit provision could not be exercised in Indiana, but this court has held that a contract containing such a provision, executed in Illinois where a cognovit provision is valid,

may be enforced in this State where the cognovit provision is invalid, if the cognovit provision is not relied upon. *Am. F. Mart. B. Corp.* v. *W. C. Redmon Sons & Co.* (1936), 210 Ind. 112, 1 N. E. (2d) 606. It is difficult to see how the mortgagee, under these circumstances, could have intended any fraud by striking out the provisions for the additional remedy which, although legal in Illinois where the contract was made, could not be taken advantage of in Indiana where the mortgage was to be foreclosed.

Appellants say that "the plaintiff demanded and received an unconscionable and cutthroat contract"; that it then "attempted to overreach appellants by clandestinely and surreptitiously altering that contract,"; and imply that the alteration was thereby proved fraudulent. The principal note taken by the mortgagee provided for the repayment of the loan with interest. The repayment of the loan evidenced by the note was secured by the mortgage and the cognovit provision provided an additional method of collection in case of default. The mortgage could not be foreclosed nor could action be taken under the cognovit provision until after a breach of the contract on the part of the appellants. All provisions for security could have been rendered harmless by the payment of the amount due on the loan pursuant to the terms of the note. At the time the note was executed it was valid under the laws of the state where it was executed.

Neither can we see in the alteration any attempt on the part of the mortgagee to "overreach" the appellants. When the mortgagee decided to foreclose in Indiana it necessarily had to abandon the alternative method of enforcing the collection of the debt by a confession of judgment. It signified such abandonment by striking out the provision. Nor do we find any evidence

to indicate that the alteration was made "clandestinely" or "surreptitiously." The alteration was made openly in the office of mortgagee's general counsel pursuant to custom and copies of the note showing the alteration were then filed as exhibits to the complaint in the foreclosure proceeding. This action could not harm the appellants and could not amount to a fraud against them.

The materiality of this alteration presents a more serious question, a question that involves a conflict between the laws of Illinois and Indiana with reference to the cognovit provision in the note. The note and mortgage were executed and made payable in the State of Illinois; therefore, all questions concerning the execution of the note, its original validity and its interpretation must be governed by the laws of Illinois.

It might be argued that the cognovit provision was a separate agreement; that its obliteration did not affect the note; and that, therefore, it was not a material alteration of the note.

It has been held that a mortgage securing a note is not a necessary part of the note, although construed with it as constituting one contract; that since the note is valid and enforceable without the mortgage the material alteration of the mortgage does not destroy the validity of the note. *Zeiglar* v. *Vollers* (1916), 59 Okla. 74, 157 P. 1035.

A cognovit provision in a note, which authorizes the confession of judgment if the note be not paid at maturity, simply provides another remedy, another method of enforcing payment. It does not affect the amount payable, the interest or the time or place of payment. Our Negotiable Instrument Law (§ 19-105, Burns' 1933, § 12822, Baldwin's 1934), pro-

vides that such a provision does not destroy the negotiability of an instrument which is otherwise negotiable. In some states it is provided that such warrants of attorney for confession of judgment shall be in a separate instrument from the note. If the power of attorney here were in a separate instrument we would have no difficulty in saying that the alteration or destruction thereof did not invalidate the note.

In *Acme Food Co.* v. *Kirsch* (1911), 166 Mich. 433, 436, 131 N. W. 1123, the Michigan Supreme Court in discussing a note containing a cognovit provision said:

> "The two undertakings executed in Grand Rapids, Mich., contained in one instrument, were separate undertakings: The first a promissory note for $250, payable 18 months after date at the First National Bank, Chicago, Illinois, with interest, etc.; the second a warrant of attorney to confess judgment."

If the cognovit provision be a separate undertaking and the note be independent thereof, the alteration of the separate and independent undertaking would not affect the note. As said in 3 C. J. S. § 43, p. 959: "Where, however, the instruments are independent of each other, although constituting a part of the same transaction, an alteration of one of them does not vitiate the other, as where the alteration is of one or more of a series of notes given in a transaction."

If the cognovit provision be actually such a separate agreement that the note is entirely independent thereof, the fact that the cognovit provision is written on the same sheet of paper as the note should not change the effect of the alteration of the separate provision. It has been held that an erasure in a list of pledged shares of stock on the back of a note does not invalidate the note since the pledge is not a part of the note. *Alex-*

*andria Bank & Trust Co.* v. *Honeycutt* (1926), 161 La. 262, 108 So. 475.

The erasure from a note of the words, "With assignment of automobile insurance damage case as security," was held not to constitute a material alteration, since such erasure did not change the terms of the note, nor affect its validity in any way. *Mair* v. *Schwartz* (1930), 179 Minn. 586, 229 N. W. 565.

An alteration in the body of a note has been held not to invalidate the note where such alteration does not change the legal effect thereof, such as the insertion of the legal rate of interest in blank space in note. *Crawford* v. *Simonton & Co.* (1909), 163 Ala. 609, 50 So. 1024; *John Kindler Co.* v. *First Nat. Bank* (1916), 61 Ind. App. 79, 109 N. E. 66. In like manner, changing the amount of the note to show the balance due has been held immaterial. *Philadelphia Nat. Bank* v. *Buchman* (1934), 314 Pa. 343, 171 A. 589.

So here, the obliteration of the cognovit provision from the body of the note does not invalidate the note unless such action can be said to change the effect of the note itself.

Neither of the parties to this appeal has cited any decision on the effect on the validity of a note of the alteration of a warrant of attorney to confess judgment embodied in such note, nor has an independent search on our part resulted in the discovery of such a decision. We are of the opinion, however, that a cognovit provision such as the one here in question does represent such a separate agreement that its alteration or obliteration, under the facts of this case, does not change the legal effect of the note and, therefore, does not invalidate the note.

Even though it should not be considered as an agreement entirely separate and independent from the note,

we are of the opinion that the obliteration of the cognovit provision in the instant case did not amount to a material alteration of the note.

At its inception the gist of the transaction between these parties was the making of a mortgage loan. The mortgagors received the sum of $15,000.00 from the mortgagee and to secure the repayment thereof gave a mortgage covering real estate located in Indiana. The parties must then have had in mind that in the event of default and foreclosure the foreclosure proceedings would be in Indiana. When the default occurred the note and mortgage were delivered to the general counsel for foreclosure, the cognovit clause was struck out of the note, and the papers were then forwarded to local counsel in Indiana for foreclosure.

At that time a statute had been passed in Indiana (Acts 1927, ch. 66, p. 174), making it unlawful "to execute or procure to be executed as part of or in connection with the execution of any negotiable instrument, or other written contract to pay money, and before a cause of action thereon shall have accrued, any contract, agreement, provision or stipulation giving to any person or persons a power of attorney" to appear in court, waive the service of process and confess judgment on such instrument. The statute further provided that all such contracts, stipulations and powers of attorney given or entered into before a cause of action on such promise to pay had accrued, should be void, and that no execution or other process should be issued out of any court in this State to aid or enforce the collection of any judgment which might be rendered upon any judgment taken in any other state where the court rendering such foreign judgment obtained jurisdiction on the judgment debtor by virtue of any such contract, agreement or stipulation. The same Legis-

lature by another statute (Acts 1927, ch. 227, p. 656), made it a criminal offense for any person to procure another to execute, or to indorse, or to assign such a cognovit note, or being the payee, indorsee or assignee thereof to accept or retain in his possession any such instrument, or to attempt to recover upon or enforce within this State any judgment obtained in any other state based upon any such instrument.

Prior to the passage of these two statutes it had been the acknowledged public policy of this State not to recognize powers of attorney to confess judgment in promissory notes and a statute (§ 2-2903, Burns' 1933, § 401, Baldwin's 1934), required that in order to have a valid execution of such power, there must be an affidavit made at the time of the execution of the power. *Irose* v. *Balla* (1914), 181 Ind. 491, 104 N. E. 851.

Although the law of Indiana required the mortgagee, coming into Indiana to foreclose, to ignore or abandon the cognovit provision in the note, the presence of the provision in the note would not have prevented a judgment on the note and the foreclosure of the mortgage. *Am. F. Mart. B. Corp.* v. *W. C. Redmon Sons & Co., supra.* In foreclosure proceedings in an Indiana court the presence of the cognovit feature in such a note does not affect the rights or legal relations of the parties or alter the legal effect of the instrument. If, therefore, the cognovit provision had been struck out of the note after the papers had been sent into Indiana for foreclosure it would not have amounted to a material alteration because such obliteration or alteration would not have affected the legal rights or relations of the parties in the foreclosure action in any way.

Can we look to the law of Indiana to determine the effect of this alteration even though the alteration was made in Illinois in contemplation of sending the papers into Indiana for foreclosure?

In *Garrigue* v. *Kellar* (1905), 164 Ind. 676, 74 N. E. 523, this court stated that the law applicable to promissory notes executed in one state and payable in another, having conflicting laws may be summed up as follows:

"1. All matters bearing upon the execution, the interpretation and validity of the note, including the capacity of the parties to contract, are to be determined by the law of the place where the contract is made.

"2. All matters connected with the payment, including presentation, notice, demand, protest and damages for nonpayment, are to be regulated by the law of the place where, by its terms, the note is to be paid.

"3. All matters respecting the remedy to be pursued, including the bringing of suits, service of process, and admissibility of evidence, depend upon the law of the place where the action is brought." These rules were quoted with approval in *Egley* v. *T. B. Bennett & Co.* (1925), 196 Ind. 50, 55, 145 N. E. 830.

In the instant case the note in question was both executed and payable in Illinois but, as we pointed out above, the parties must have contemplated that in the event of foreclosure proceedings such proceedings would necessarily be in Indiana. The state of the forum for foreclosure proceedings was determined in advance by reason of the fact that the mortgaged real estate was located in Indiana. The parties must, therefore, have had in mind that in the event of foreclosure all matters having to do with the remedy would be determined by the law of Indiana. The true test for the determination of the proper law

of a contract is the intent of the parties and this intent, whether express or implied, will be given effect except under exceptional circumstances showing a purpose to commit a fraud on the law. 11 Am. Jur. § 119, p. 404

While the decisions are not uniform in the holding, it seems to us that a warrant of attorney, such as we have here, to appear for the maker of a note after maturity and confess judgment is clearly a matter respecting the remedy. It is an alternative method for attempting to collect the money. It is a provision becoming operative only after a default in payment. In *Hamilton* v. *Schoenberger* (1877), 47 Iowa 385, 387, the court said: "A confession of judgment pertains to the remedy."; and, therefore, held that it was governed by the law of the forum where the remedy was sought. While the laws of the state where the contract was made probably govern as to the original validity of a power to confess judgment, the exercise of the power must be governed by the law of the forum.

The mortgagee here, after the maturity of the note, had two options. It could either exercise the power to confess judgment or it could go into Indiana and foreclose its mortgage. It chose to abandon the first option and to depend on the foreclosure of its mortgage. It signified its intention to abandon the first option by striking out the cognovit provision of the note. Under the facts of this case it was not a material alteration of the note to obliterate the cognovit provision therefrom.

Even if the alteration of the note had been material, it would not have invalidated the mortgage since the alteration was not fraudulent and the note and mortgage were separable instruments. It is true that in the note and mortgage it is stated that the mortgage is "incident" to the note, but when we

consider all of the provisions of the mortgage together we find that the language of the mortgage indicates that the parties had in mind a mortgage loan evidenced by the note and secured by the mortgage. The mortgage recites that the mortgagors "have justly indebted to the Polish Roman Catholic Union of America in the sum of Fifteen Thousand ($15,000.00) Dollars, secured to be paid by their one principal promissory note." The mortgage also provides: "Now therefore, this Indenture Witnesseth, that the said mortgagors, for the better securing the payment of the money aforesaid, with interest thereon according to the tenor and effect of the said principal promissory note above mentioned . . . have granted . . . ." The mortgage was on the condition that the mortgagors should pay "the aforesaid sum of money" at the time and in the manner specified in the note. The mortgage further recites: "And in Consideration of the money loaned as aforesaid to the party of the first part, and in order to create a first lien and encumbrance on said premises under this Mortgage . . . ." These and similar statements in the mortgage, when the instrument is considered as a whole, seem to clearly indicate that the mortgage was given to secure the payment of the loan and that it was not a mere incident to the note. This being true, the material alteration of the note would not destroy the mortgage unless such alteration was fraudulent. 2 Am. Jur. § 38, p. 626 and cases cited; *Perry* v. *Manufacturers Nat'l Bank of Lynn* (1940), 305 Mass. 368, 25 N. E. (2d) 730, 127 A. L. R. 339; *Born* v. *Lafayette Auto Co.* (1925), 196 Ind. 399, 145 N. E. 833.

There was, therefore, no error in the conclusion of law that the mortgagee was entitled to have its mortgage foreclosed and that the real estate described therein should be sold.

The appellants complain of the admission in evidence of the answers to certain interrogatories. The motion for a new trial did not set out the answers admitted or the objections made thereto. Since the question was not properly presented to the trial court by the motion for a new trial, it cannot be considered on appeal. *Ohio Valley Trust Co.* v. *Wernke* (1913), 179 Ind. 49, 99 N. E. 134; *Kimmick* v. *Linn* (1940), 217 Ind. 485, 29 N. E. (2d) 207.

The appellants attempt to raise the question that the judgment erroneously provided for a sale without relief from valuation and appraisement laws. They attempt to raise this question under the specification of their motion for a new trial that the finding and decision of the court was contrary to law and not supported by sufficient evidence. As stated in Vol. II Watson's Revision of Works Practice and Forms, § 2179, p. 743: "It is a well-settled rule of practice that no advantage can be taken of a defect or error in the form or substance of a judgment on appeal unless the attention of the lower court has been called thereto by the proper objection or motion, and an exception has been reserved." Here there was no motion to modify the judgment.

By the tenth and eleventh specifications of their motion for a new trial, the appellants sought a new trial because of newly discovered evidence and accident and surprise which prevented their having a fair trial. Appellants attempted to support these two specifications by filing certified transcripts of the testimony of Helen Kolbusz and Helen Gruszecka given in a trial of the case of Grossman v. Lukaszewski in the Lake Superior Court which testimony contradicted evidence given in this case by Helen Gruszecka as to the time and manner of the obliteration of the

cognovit clause. Here the newly discovered evidence could only serve to impeach the truth of the testimony which Helen Gruszecka had given in the trial of this cause. A new trial will not be granted to enable a party to procure evidence to contradict or impeach a witness. *Spaulding* v. *State* (1904), 162 Ind. 297, 70 N. E. 243. Nor was there a proper showing that by due diligence the evidence might not have been produced at the trial. Such a showing is necessary. *Zimmerman* v. *Weigel* (1902), 158 Ind. 370, 63 N. E. 566.

Neither were appellants entitled to a new trial on the ground of accident or surprise, which ordinary prudence could not have guarded against. This ground does not cover the surprise of a party at evidence which was admissible under the issues. *Fudge* v. *Marquell* (1905), 164 Ind. 447, 72 N. E. 565, 73 N. E. 895. The evidence given by Helen Gruszecka in this cause was admissible under the issues.

We find no reversible error. The judgment is affirmed.

NOTE.—Reported in 39 N. E. (2d) 440.